IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| LUIS M. GOMEZ JR.,<br>*Plaintiff* | § § § | |
| -vs- | § § | SA-20-CV-01252-XR |
| BENJAMIN HERNANDEZ, BADGE NO. 1864, INDIVIDUALLY AND IN OFFICIAL CAPACITY AS A SHERIFF'S DEPUTY, FOR BEXAR COUNTY SHERIFF'S OFFICE; AND A. TUBERVILLE, BADGE 226, BADGE NO. 1864, INDIVIDUALLY AND IN OFFICIAL CAPACITY AS A SHERIFF'S DEPUTY, FOR BEXAR COUNTY SHERIFF'S OFFICE;<br>*Defendants* | § § § § § § § § § § § § § § | |

**ORDER**

On this date, the Court considered Defendants' motion for summary judgment (ECF No. 34) and Plaintiff's response (ECF No. 35). After careful consideration, the Court issues the following order.

**BACKGROUND**[1]

Plaintiff Luis M. Gomez, Jr. ("Gomez") filed this action under 42 U.S.C. § 1983 against Bexar County Sheriff's Office ("BCSO") Deputies Benjamin Hernandez ("Hernandez") and Adam Tuberville ("Tuberville" and, together with Hernandez, the "Officers") for damages arising from his arrest in the early morning hours of October 25, 2018.

Tuberville was patrolling the area of Adams Hill off of South Ellison Drive, when he noticed Gomez's vehicle run a stop sign at Raven Field Drive and Quiet Plain Drive and swerve into the opposite lane of traffic, nearly side-swiping a car parked on the other side of the street. ECF No. 34-1, Tuberville Aff. ¶¶ 1, 3. The vehicle then over-corrected into the right lane, nearly

---

[1] The following facts are undisputed unless otherwise noted.

hitting another car. *Id.* ¶ 3. Tuberville activated his lights and attempted to initiate a traffic stop, but Gomez sped away. *Id.* ¶ 4. Tuberville advised dispatch that he was pursuing a vehicle that refused to stop. *Id.* ¶ 5. As Tuberville and Gomez continued to speed down Raven Field, Tuberville saw Deputy Hernandez's vehicle at the end of the road they were traveling on. *Id.* In response to the dispatch call, Hernandez had parked in the middle of the intersection of Raven Field and Pue Road and activated his emergency lights. ECF No. 34-2, Hernandez Aff. ¶ 4.

Gomez aimed his vehicle directly at Hernandez's patrol car. Hernandez attempted to take evasive action, but Gomez's vehicle struck his patrol car head on, injuring Hernandez's knee and leg. *Id.* ¶¶ 5, 21. Tuberville and Hernandez continued to pursue Gomez as he then turned onto a dead-end road and into a fenced-in parking lot. *Id.* ¶ 7; ECF No. 34-1, Tuberville Aff. ¶¶ 7–9. Gomez then jumped out of his vehicle as it was still moving and fell onto the wet parking lot. ECF No. 34-1, Tuberville Aff. ¶ 10. The Officers assert that Gomez got up, fell face down a second time, and, despite Tuberville's orders to stop, finally managed to take off on foot. *If.*

Gomez ran towards the perimeter fence of the parking lot. *Id.* ¶ 11. Tuberville again ordered him to stop, drew his taser, and followed Gomez on foot. *Id.* Tuberville caught up with Gomez and shoved Gomez into the fence. *Id.* ¶ 12. Gomez spun around to face Tuberville and grabbed his shirt collar. Gomez began swinging his arms and knocked the taser from Tuberville's hands to the pavement as he attempted to tase Gomez. *Id.* ¶ 13. Tuberville acknowledges that he continued to hold onto Gomez to prevent Gomez from throwing him onto his back, but denies striking him in the face. *Id.* ¶ 14. Moments later, Hernandez arrived. *Id.* ¶ 16. Hernandez grabbed Gomez by his jacket and threw him to the ground. *Id.* When Gomez attempted to get up, Tuberville and Hernandez "jumped on top of [him] in order to gain control of him." *Id.* Hernandez held Gomez from the torso up; Tuberville held him from the waist down. *Id.*

The parties disagree about what happened next. The Officers state that Gomez began to punch Hernandez in the mouth, and, during the ensuing struggle, Tuberville struck Gomez in the stomach and torso, *id.* ¶ 17, and Hernandez struck Gomez "in the mouth approximately 4-5 times," ECF No. 34-2, Hernandez Aff. ¶ 14. After struggling for approximately 15 seconds, Hernandez was able to handcuff Gomez. *See id.*; ECF No. 34-1, Tuberville Aff. ¶ 17. At his deposition, Plaintiff testified that he awoke face-up on the ground approximately fifteen seconds after he started running from the Officers on foot. ECF No. 34-4, Plaintiff Dep. Tr. 30:12–14, 23–24. When he woke up, he was unable to move because the Officers were holding him down and punching him in the head and face. *Id.* at 30:18–22, 31:14–15. Eventually, Plaintiff testified that he could not withstand the beating anymore, and said, "Okay, okay," suggesting that he intended to comply with the Offers. *Id.* at 31:18–22.[2] Still, he testified that the Officers continued to beat him. *Id.* at 31:23–25; ECF No. 35-2, Gomez Aff. ¶ 3 (asserting that he was hit at least five more times).

Plaintiff was hospitalized for approximately three days for his injuries, including bleeding in his brain, significant swelling and contusions, nasal fractures, and lacerations that have caused scarring on his face. *See* ECF No. 1 ¶ 9; ECF No. 34-4, Plaintiff Dep. Tr. 46:19–47:12; ECF No. 35-3 at 4–11. Plaintiff was charged with evading arrest in a vehicle, aggravated assault with a deadly weapon, evading arrest on foot, and resisting arrest. He pled *nolo contendere* to resisting arrest and was sentenced to eight years' probation. *See* ECF No. 34-3 (plea and sentencing documents).

Plaintiff filed his original complaint on October 22, 2020, alleging a claim for violation of his Eighth Amendment right to be free from excessive force under 42 U.S.C. § 1983 and a state-

---

[2] Hernandez appears to agree that Gomez indicated his verbal intent to comply—stating "alright, alright"—but only after he had been handcuffed. ECF No. 34-2, Hernandez Aff. ¶ 14.

law claim for intentional infliction of emotional distress.³ ECF No. 1 at 4.

Defendants now move for summary judgment, arguing that Plaintiff's constitutional claim is barred by the doctrine of qualified immunity. ECF No. 34 at 10–16. In support of their motion, Defendants offer affidavits executed by Officers Tuberville and Hernandez, documents memorializing Plaintiff's conviction and sentence, and Plaintiff's deposition testimony. *See* ECF No. 34-1, Tuberville Aff.; ECF No. 34-2, Hernandez Aff.; ECF No. 34-3 (plea and sentencing documents); ECF No. 34-4, Plaintiff Dep. In response, Plaintiff has provided photographs of his injuries, his own affidavit describing what he recalls about the arrest and his injuries, and copies of his medical records. ECF No. 35-1 (photographs); ECF No. 35-2, Plaintiff Aff.; ECF No. 35-3 (medical records).

Further, for the reasons discussed below, the Court finds that, viewing the facts in the light most favorable to Plaintiff, a reasonable jury could conclude that the Officers' use of force in subduing and arresting Gomez was excessive and objectively unreasonable.

## DISCUSSION

### I.   Legal Standards

The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56. To establish that there is no genuine issue as to any material fact, the movant must either submit evidence that negates the existence of some material element of the non-moving party's claim or defense, or, if the crucial issue is one for which the nonmoving party will bear the burden of proof at trial, merely point out that the evidence in the record is insufficient to support an essential element of the nonmovant's claim or defense. *Little v. Liquid Air Corp.*, 952 F.2d 841,

---

³ As discussed below, the Court will analyze Plaintiff's excessive-force claim under the Fourth Amendment.

4

847 (5th Cir. 1992), *on reh'g en* banc, 37 F.3d 1069 (5th Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

Once the movant carries its initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate. *See Fields v. City of S. Hous.*, 922 F.2d 1183, 1187 (5th Cir. 1991). Any "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment," *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003), and neither will "only a scintilla of evidence" meet the nonmovant's burden. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Rather, the nonmovant must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). The Court will not assume "in the absence of any proof . . . that the nonmoving party could or would prove the necessary facts" and will grant summary judgment "in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little*, 37 F.3d at 1075.

For a court to conclude that there are no genuine issues of material fact, the court must be satisfied that no reasonable trier of fact could have found for the nonmovant, or, in other words, that the evidence favoring the nonmovant is insufficient to enable a reasonable jury to return a verdict for the nonmovant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In making this determination, the court should review all the evidence in the record, giving credence to the evidence favoring the nonmovant as well as the "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000). The Court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary

judgment, *id.* at 150, and must review all facts in the light most favorable to the nonmoving party. *First Colony Life Ins. Co. v. Sanford*, 555 F.3d 177, 181 (5th Cir. 2009).

**II.     Analysis**

Qualified immunity protects public officials from suit and liability for damages under § 1983 unless their conduct violates a clearly established constitutional right. *Mace v. City of Palestine,* 333 F.3d 621, 623 (5th Cir. 2003). In addressing whether qualified immunity applies, courts engage in a two-step inquiry, determining (1) whether a federal statutory or constitutional right was violated on the facts alleged; and (2) whether the defendant's actions violated clearly established rights of which a reasonable person would have known. *Id.* at 623–24. The two steps of the qualified-immunity inquiry may be performed in any order. *Pearson v. Callahan,* 555 U.S. 223, 236 (2009).

**A.     Constitutional Violation**

The first inquiry in any § 1983 suit is "to isolate the precise constitutional violation with which [the defendant] is charged." *Baker v. McCollan*, 443 U.S. 137, 140 (1979). Both Plaintiff's original complaint and his summary judgment briefing indicate that his excessive force claim is premised on a violation of the Eighth Amendment's prohibition on cruel and unusual punishment. *See* ECF No. 1 at 3–4; ECF No. 35 at 2. The Eighth Amendment, however, applies only to the treatment of convicted persons. *Whitley v. Albers*, 475 U.S. 312 (1986) (analyzing claim of excessive force to subdue convicted prisoner under an Eighth Amendment standard). Although Plaintiff is now a convicted person, the allegedly excessive force occurred *before* his conviction. Instead, where, as here, an excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right "to be secure in their persons . . . against

unreasonable . . . seizures" of the person. *See Tennessee v. Garner*, 471 U.S. 1, 7–22 (1985) (holding that claim of excessive force to effect arrest analyzed under a Fourth Amendment standard). Accordingly, the Court analyzes his claim for excessive force under the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 396 (1989).

To establish a claim of excessive force under the Fourth Amendment, a plaintiff must demonstrate: "(1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Tarver v. City of Edna*, 410 F.3d 745, 751 (5th Cir. 2005). The first element turns on the second and third, *Sam v. Richard*, 887 F.3d 710, 714 (5th Cir. 2018), which are typically analyzed together according to the factors enunciated in *Graham*. *See Hanks v. Rogers*, 853 F.3d 738, 745 (5th Cir. 2017) (analyzing the second and third factors together).

To establish the first element of an excessive force claim, a plaintiff must prove more than a de minimis injury. *Tarver*, 410 F.3d at 752. "[A]s long as a plaintiff has suffered 'some injury,' even relatively insignificant injuries and purely psychological injuries will prove cognizable when resulting from an officer's unreasonably excessive force." *Alexander v. City of Round Rock*, 854 F.3d 298, 309 (5th Cir. 2017) (citation and quotation marks omitted).

The second and third elements are not governed by a single generic standard. *Graham*, 490 U.S. at 393. Excessive force claims are necessarily fact-intensive; whether the force used is "excessive" or "unreasonable" depends on the "totality of the circumstances." *Garner*, 471 U.S. 1, 8–9 (2010); *see also Brosseau v. Haugen*, 543 U.S. 194, 201 (2004) (observing that this "area is one in which the result depends very much on the facts of each case"). In making this determination, the Fifth Circuit has instructed courts to apply the so-called *Graham* factors, which include (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to

the safety of the officers or others, and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight. *Poole v. City of Shreveport*, 691 F.3d 624, 638 (5th Cir. 2012) (quoting *Graham*, 490 U.S. at 396). Courts may also consider the "extent of [the] injury inflicted" to determine whether an officer's force was justified, or if it instead "evinced such wantonness with respect to the unjustified infliction as is tantamount to a knowing willingness that it occur.'" *Deville v. Marcantel*, 567 F.3d 156, 168 (5th Cir. 2009) (quoting *Whitley*, 475 U.S. at 321). The underlying intent or motivation behind an officer's actions is irrelevant to this determination. *See Poole*, 691 F.3d at 628.

"The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* (quoting *Graham*, 490 U.S. at 396). While officers may consider a suspect's refusal to comply with instructions in assessing whether physical force is needed to effectuate compliance, they must assess not only the need for force, but also "the relationship between the need and the amount of force used." *Gomez v. Chandler*, 163 F.3d 921, 923 (5th Cir. 1999); *Deville*, 567 F.3d at 167). "The timing, amount, and form of a suspect's resistance are key to determining whether the force used by an officer was appropriate or excessive." *Joseph on behalf of Est. of Joseph v. Bartlett*, 981 F.3d 319, 332–33 (5th Cir. 2020).

The Fifth Circuit has emphasized that determining "the reasonableness of an officer's conduct under the Fourth Amendment is often a question that requires the input of a jury." *Lytle v. Bexar Cnty.*, 560 F.3d 404, 411 (5th Cir. 2009). "When facts are undisputed and no rational factfinder could conclude that the officer acted unreasonably," a court "can hold that an officer acted reasonably as a matter of law." *Id.* at 412. However, "when facts are disputed and significant factual gaps remain that require the court to draw several plaintiff-favorable inferences," a court

"must consider what a factfinder could reasonably conclude in filling these gaps and then assume the conclusion most favorable to the plaintiff." *Id.* If a rational factfinder could conclude that the Officers violated the Constitution, the Court must proceed to the qualified immunity question. *See id.*

With respect to the first element of an excessive-force claim, Plaintiff has produced ample evidence of his head injuries, including bleeding in his brain, significant swelling and contusions, nasal fractures, and lacerations that have caused scarring on his face. ECF No. 34-4, Plaintiff Dep. Tr. 46:19–47:12. The question, then, is whether the Officers' use of force was clearly excessive and objectively unreasonable.

Plaintiff testified that he passed out while the Officers were beating him, and when he woke up on the ground, they were still beating him. *Id.* 30:12–31:15. He further asserted that the Officers continued to beat him, even after he verbally indicated his intent to cooperate. *Id.* at 31:18–25. Defendants appear to concede that Plaintiff's complaint "provides few details of the use of excessive force against him because he claims that he was 'unconscious' at times." ECF No. 34 at 15. Defendants emphasize that Plaintiff's deposition testimony revealed that he could not remember whether he complied with the Officers' orders to stop running and put his hands behind his back, "which officer hit him or with what they hit him," or whether "any use of force was before he was handcuffed." *See id.* at 15 (citing ECF No. 34-4, Plaintiff Dep. Tr. 26–31, 48–49).

Defendants correctly observe that "[a] lack of memory does not create a genuine dispute [of fact]." *Id.* (citing *Chambers v. Troy-Bilt, L.L.C.*, 687 F. App'x 401, 403 (5th Cir. 2017)). Here, however, Plaintiff's case does not rely on a lack of memory but on the specific facts he *does* remember—regaining consciousness and stating "Okay, okay," to indicate his compliance as the Officers continued to allegedly beat him on the head. Defendants are welcome to address the

9

apparent gaps in Plaintiff's recollections during cross-examination at trial, but these deficits bear on Plaintiff's credibility and are therefore beyond the scope of the Court's authority in reviewing a motion for summary judgment. *Sanford*, 555 F.3d at 181.

A suspect's unconscious state does not immunize the officer who assaulted him from constitutional scrutiny. Indeed, the use of physical force against a restrained, passively resisting, or non-resisting subject violates the Fourth Amendment; this is especially true where an officer uses force even after the suspect is rendered unconscious. *Taylor v. Hartley*, 488 F. Supp. 3d 517, 534 (S.D. Tex. 2020) (denying qualified immunity where plaintiff alleged that officer "beat [him] within an inch of his life" and continued to punch him even "after he went limp and unconscious," and medical evaluations tended to corroborate the extreme nature of the beating); *Shumpert v. City of Tupelo*, 905 F.3d 310, 323 (5th Cir. 2018) ("[C]aselaw establishes that it is unreasonable to use force after a suspect is subdued or demonstrates compliance.").

Along with the severity of his injuries, Plaintiff's deposition testimony that the Officers continued to beat him both while he was unconscious and following his verbal indication of compliance creates a genuine issue of material fact as to whether the Officers' use of force exceeded the bounds of the Fourth Amendment. *Deville*, 567 F.3d at 168. Accordingly, the Court must proceed to the second step of the immunity inquiry.

### B.   Qualified Immunity

At the second step of the immunity inquiry, the court considers whether the officer's use of force, though a violation of the Fourth Amendment, was nevertheless objectively reasonable in light of clearly established law at the time the challenged conduct occurred. "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that

what he is doing violates that right." *Ashcroft v. al-Kidd,* 563 U.S. 731, 741 (2011) (citations, quotation marks and alteration marks omitted). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002); *see also al-Kidd,* 563 U.S. 731 (stating that a plaintiff does not need "a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate."). Clearly established law is not determined "at a high level of generality." *al-Kidd,* 563 U.S. at 742. Instead, "[t]he dispositive question is 'whether the violative nature of particular conduct is clearly established.'" *Mullenix v. Luna,* 511 U.S. 7, 12 (2015) (citation and emphasis omitted). The inquiry must look at the specific context of the case. *Id.*

"The central concept is that of 'fair warning': The law can be clearly established 'despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights.'" *Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir. 2004) (internal quotations and citation omitted). Courts must judge the reasonableness of an officer's conduct by taking into account the "'tense, uncertain, and rapidly evolving'" circumstances in which officers must often "'make split-second judgments . . . about the amount of force that is necessary in a particular situation.'" *Bush v. Strain*, 513 F.3d 492, 502 (5th Cir. 2008) (quoting *Graham*, 490 U.S. at 397). From this perspective, courts should examine the objective reasonableness of an officer's belief that a certain degree of force was lawful under the circumstances.

On October 25, 2018, it was clearly established that continuing to beat a detainee who has stopped resisting or is unconscious constitutes an unconstitutional use of force. *Taylor*, 488 F. Supp. 3d at 534 ("This Court likewise has little trouble concluding that the law has long been

clearly established that an officer can't continue to beat an arrestee well after he becomes unconscious. Every reasonable officer would have understood that doing so violates a person's constitutional right."); *see also Smith v. Aguirre*, No. 4:08-CV-304-A, 2009 WL 1683477, *6 n.3 (N.D. Tex. June 12, 2009) ("The court cannot hold that a reasonable officer would not have known that beating and punching an unconscious detainee . . . was unlawful."); *Anderson v. McCaleb*, 480 F. App'x 768, 773 (5th Cir. 2012) (holding that clearly established law put officers on notice that they could not tase or beat plaintiff once he stopped resisting arrest).

As discussed in the first step of the qualified immunity analysis, under Plaintiff's version of events, it is not clear as a matter of law that the Officers acted reasonably in their efforts to subdue and restrain him. At a minimum, determining whether their conduct was objectively reasonable requires factfinding and credibility assessments and, accordingly, precludes summary judgment on the basis of qualified immunity. *Sanford*, 555 F.3d at 181; *see also Tarver*, 410 F.3d at 754.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment (ECF No. 34) is **DENIED**. Plaintiff is directed to file an amended complaint revising his claim for a violation of the Eighth Amendment's prohibition on cruel and unusual punishment to a claim alleging a violation of his Fourth Amendment right against unreasonable seizure.

It is so **ORDERED**.

**SIGNED** November 28, 2022.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE